UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| ALLISA P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-556-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Allisa P. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 8, 11. Plaintiff also filed a reply brief. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 11) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 13) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on July 11, 2018, alleging disability beginning July 6, 2017 (the disability onset date), due to multiple mental impairments, headaches, and back pain. Transcript ("Tr.") 28, 246. The claims were initially denied on

September 24, 2018, after which Plaintiff requested a hearing. Tr. 28. On March 16, 2020, Administrative Law Judge Martha Bower ("the ALJ") held a video hearing. Tr. 28. Plaintiff appeared and testified in Buffalo, New York, and was represented by Carol A. Brent, an attorney. *Id*. Martina Henderson, an impartial vocational expert, also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on April 8, 2020, finding that Plaintiff was not disabled. Tr. 28-38. On March 2, 2021, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's April 8, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her April 8, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since July 6, 2017, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: attention-deficit hyperactivity disorder, a personality disorder, an affective disorder, and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to object oriented tasks, with only occasional work related interactions with co-workers, supervisors and the general public.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 3, 1997 and was 20 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 6, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 28-38.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on July 11, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 38. The ALJ also determined that based on the application for supplemental security benefits protectively filed on July 11, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## <u>ANALYSIS</u>

Plaintiff asserts two points of error, both of which argue that the ALJ's consideration of the mental opinion evidence was not supported by substantial evidence.[1] *See* ECF No. 8-1 at 1, 14-30. First, Plaintiff challenges the ALJ's finding regarding the September 2018 opinion of psychiatric consultative examiner Stephen Farmer, Ph.D. ("Dr. Farmer"). *See id*. at 14-18. According to Plaintiff, although theALJ found the opinion "generally persuasive," her conclusion was "internally inconsistent," and she failed to explain why she failed to incorporate the moderate limitations in the ability to regulate emotions, control behavior, and maintain well-being opined by Dr. Farmer. *See id*. Next, Plaintiff argues that the ALJ improperly rejected the February 2020 opinion of treating psychiatric nurse practitioner Adrienne Roy, NP ("Ms. Roy"). *See id*. at 1, 18-29.

In response, the Commissioner generally argues that the ALJ's RFC finding was supported by substantial evidence, including multiple medical opinions, Plaintiff's mental health treatment history showing that she successfully managed her symptoms through largely conservative measures, and Plaintiff's wide range of activities. *See* ECF No. 11-1 at 14-23.

---

[1] The Court notes that Plaintiff does not dispute the ALJ's findings related to her physical impairments. *See generally* ECF No. 8-1. Accordingly, the Court declines to address the ALJ's physical RFC finding in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Specifically, with regard to Dr. Farmer's opinion, the Commissione argues that Dr. Farmer's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being is not inconsistent with the RFC for simple, unskilled, work involving limited social interaction, such as the ALJ determined here.. *See id*. at 16-18. Further, argues the Commissioner, the ALJ properly considered and discounted the February 2020 opinion of Ms. Roy because it was unsupported by her own treatment notes and inconsistent with recent therapy progress notes and Plaintiff's reported activities of daily living. *See id*. at 23-28.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's RFC finding was supported by substantial evidence, including the opinions of two psychiatric consultative examiners and the findings of a state agency psychological consultant, along with Plaintiff's overall conservative course of treatment, largely normal mental status findings, and wide range of daily activities. Furthermore, the ALJ adequately considered Ms. Roy's opinion and reasonably found it unpersuasive, as it was unsupported by her own treatment notes and inconsistent with the evidence in the record overall, including the other medical opinions, Plaintiff's largely normal mental status findings and conservative treatment history, and her wide array of daily activities. Accordingly, the Court finds no error.

Plaintiff alleges limitations related to mental health symptoms, including depression, anxiety, feeling overwhelmed, difficulty concentrating, poor memory, and suicidal thoughts. The treatment records show that Plaintiff received individual therapy and medication management for her mental health impairments throughout the relevant period. On July 13, 2017, Plaintiff attended a psychotherapy intake session with Sarah Rowland, Ph.D. ("Dr. Rowland"), at WNY Psychotherapy Services ("WNY"). Tr. 420. Dr. Rowland noted that Plaintiff appeared disorganized, anxious, and depressed with rapid speech. *Id*. On August 1, 2017, Plaintiff reported worsening symptoms, and in September 2017,  Dr. Rowland discussed the need for medication management through a psychiatrist. Tr. 420.

On September 26, 2017, Plaintiff presented for an initial psychiatric evaluation of anxiety and depression and for medication management with Jeanne Salada-Conroy, APRN-BC ("Ms. Salada-Conroy"), at S.P.A., LLP, upon referral from Dr. Rowland. Tr. 356-58. Plaintiff stated that she "can't hold a job" and was applying for SSI. *Id*. She reported "dissociations" and history of cutting and violence. *Id*. She also reported anxiety, depression, irritability, panic attacks, and excessive worry, and she was having difficulty falling and staying asleep. *Id*. On examination, Plaintiff displayed a depressed and anxious mood but was cooperative and appeared healthy, well-developed, and appropriately dressed. Tr. 357. She showed decreased impulse control but no suicidality, and she was alert and oriented with good eye contact, fair attention and concentration, and intact memory, judgment, and insight. *Id*. Ms. Conroy-Salada diagnosed bipolar II disorder, attention-deficit disorder, generalized anxiety disorder, and borderline personality disorder. (Tr. 357) and prescribed Aripiprazole and Alprazolam. (Tr. 358). Plaintiff's mental status examinations were unchanged at visits on November 15, 2017, January 24, 2018, and March 7, 2018. *See* Tr. 360, 363, 367.

During an October 2017 session with Dr. Rowland, Plaintiff reported she was "doing better" after she began taking Abilify and discussed her interest in cosplay,[2] friendships, and her support system. Tr. 420. It was noted that Plaintiff's other medications included Abilify/Aripiprazole, Xanax/Alprazolam, Adderall, and Trazadone. *Id*.

On November 6, 2017, Plaintiff presented to Sheridan Pediatrics, P.C. for an annual physical. Tr. 345. She stated she was not working due to due to anxiety and panic attacks. *Id*. She reported that Abilify helped, but she was still having visual "disassociations" that interfered with driving if she was going a long distance. *Id*.

On November 28, 2017, Plaintiff reported having an "anger fit" with her sister and kicking a trash can. Tr. 420. On December 5, 2017, she claimed to be psychic and reported seeing things before they happened. *Id*.

Plaintiff treated with Ms. Conroy again on January 24, 2018. Tr. 362. Plaintiff appeared anxious and sad; her mood was anxious and depressed; she had fair attention and concentration, intact memory, insight, and judgment; and decreased impulse control. Tr. 363. Her diagnoses and medications were unchanged. Tr. 364.

In March 2018, Plaintiff reported to Dr. Rowland that she had been in a "bad car accident," but there were no injuries. Tr. 421. She also reported anxiety related to the accident and worsening depression and noted that Lexapro was "helping with anger." *Id*. She stated she spent most of her day sleeping, watching television, and playing video games. *Id*. Plaintiff attended additional sessions with Dr. Rowland on April 17, 2018, May 1, 2018, May 29, 2018, and June 12, 2018. Tr. 422. In May and June 2018, she reported being upset about a recent break-

---

[2] "Cosplay" is the activity or practice of dressing up as a character from a work of fiction, such as a comic book, video game, or television show. MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/ cosplay (last visited Jan. 20, 2024).

up and tired and stressed from moving to a new apartment. Tr. 422. On July 27, 2018, Dr. Rowland noted that Plaintiff had "been inconsistent with her appointments, leaving early, canceling, and no showing," and there had been no contact since June 12, 2018, when she left her appointment early. Tr. 422.

On March 26, 2018, consultative examiner Susan Santarpia, Ph.D. ("Dr. Santarpia"), conducted a psychiatric evaluation. Tr. 406-10. Upon examination, Plaintiff was cooperative and responsive to questions, with adequate manner of relating and overall presentation. Tr. 407. She was well-groomed and casually dressed, with appropriate eye contact, fluent speech, clear voice, and adequate expressive and receptive language. Tr. 407. Her mood was neutral; her affect was full range; speech and thought content were appropriate; and she was fully oriented with a clear sensorium and normal motor activity. Tr. 408. She had average cognition, fair insight and judgment, and coherent and goal-directed thought processes. Tr. 407-08. Her attention, concentration, and memory were intact. Tr. 408. She reported dressing, bathing, grooming, cleaning, managing her money, socializing with friends and family, playing video games, using a computer, watching television, reading, doing art, using her cellphone, and going on social media. Tr. 408. She denied any suicidal ideation or plan. Tr. 407. Dr. Santarpia diagnosed attention deficit hyperactivity disorder, generalized anxiety disorder, and bipolar II disorder. Tr. 409. She opined that Plaintiff had mild impairments in interacting adequately with supervisors, coworkers, and the public and in regulating emotions, controlling behavior, and maintaining well-being. *Id.* She also opined that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function daily. *Id.*

On August 2, 2018, Plaintiff began mental health treatment at Horizon Corporations ("Horizon"). Tr. 468. She was worried about being able to return to school/work; she wanted to

return to school; gain her independence; and learn to control anxiety attacks and anger. *Id*. Plaintiff reported symptoms consistent with major depressive order. Tr. 469. She stated that she was compliant with her medication. Tr. 471. She also reported her history of self-injuring behavior ("SIB"), including cutting and burning, and a previous suicide attempt. Tr. 472. She stated she engaged in SIB "periodically," usually as a "one-time thing" after "an intense argument or something." *Id*. She stated she was afraid to use a knife, so she used tweezers instead to "make a deep scrape." *Id*. Mental status examination showed she was well groomed with normal speech, perception, and activity; cooperative and friendly attitude; euthymic mood and affect; relaxed posture; full orientation;intact memory, attention and concentration; appropriate thought content; logical and goal-directed thought process; and fair eye contact, insight, and judgment. Tr. 478-79.

Dr. Farmer conducted a psychiatric consultative examination on September 4, 2018. Tr. 424-27. Upon examination, Plaintiff was cooperative with adequate social skills and manner of relating. Tr. 425. Her mood was mildly anxious, but her affect was of full range and appropriate in speech and thought content, and she had fair grooming, casual dress, and normal motor behavior. Tr. 425. She had appropriate eye contact; fluent and clear speech; adequate expressive and receptive language skills; intact attention, concentration, and memory; fair insight and judgment; average cognitive functioning; and coherent and goal-directed thought processes. Tr. 425-26. Plaintiff reported dressing, bathing, grooming, cooking, cleaning, doing laundry, shopping, managing money, socializing with friends, and making costumes. Tr. 426. She reported no suicidal ideation in the past thirty days. Tr. 424. In Dr. Farmer's opinion, Plaintiff had moderate limitations in interacting adequately with supervisors, coworkers, and the public, amd regulating emotions, controlling behavior, and maintaining well-being. Tr. 426-27. Dr.

Farmer opined that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. Tr. 427.

On September 11, 2018, state agency psychological consultant T. Bruni, Ph.D. ("Dr. Bruni"), reviewed the then-available evidence of record and concluded that Plaintiff could do low-contact work and had moderate limitations in her ability to interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation. Tr. 80-82, 92-94.

On September 25, October 9, and October 16, 2018, Plaintiff attended individual therapy with Rachel Wroblewski, LMSW ("Ms. Wroblewski"), at Horizon. Tr. 612-23. On October 9, 2018 and October 16, 2018, she displayed a euthymic mood and affect. Tr. 617, 621. On October 29, 2018, Plaintiff treated with Ms. Roy at Horizon. Tr. 499-504. Ms. Roy noted that Plaintiff had been referred to Horizon due to a change in insurance coverage. Tr. 501. Plaintiff's mood was depressed and anxious with congruent affect. Tr. 499. She reported feeling sluggish and unmotivated; she was eating and sleeping too much; and she was "dissociating" at least once per week. Tr. 501. She stated that "meds are mostly helpful" but Lexapro was not working as well as in the past, when she had felt more motivated and energized. *Id*. She also stated that Ability helped with the dissociation. *Id*. On mental status examination, Plaintiff showed a depressed mood and affect, but otherwise unremarkable mental status examination findings, and she had good rapport with Ms. Roy. Tr. 499-500. Plaintiff's Lexapro was increased to address her depressive symptoms, and she was continued on Abilify and Trazodone. Tr. 503.

Plaintiff had therapy visits with Ms. Wroblewski on November 13, 2018 and December 11, 2018. Tr. 624-27, 628-32. Plaintiff showed a euthymic mood and affect during both visits

and reported self-consciousness in social situations and excessive worry. Tr. 626, 630. In December 2018, she reported difficulty sleeping over the past two weeks and was taking two Trazodone instead of only one. Tr. 630. On January 15, 2019, Plaintiff showed euthymic mood and affect and was alert and oriented; she also reported self-consciousness in social situations and excessive worry. Tr. 635. On May 7, 2019 and June 11, 2019, Plaintiff's, mood and affect were euthymic and she reported an overall stable mood, albeit with some irritability. Tr. 645, 650.

Plaintiff was seen by Ms. Roy on January 10, 2019 for medication management. Tr. 505-12. She showed dysphoric mood and affect but otherwise had unremarkable mental status examination findings. Tr. 506-07. Plaintiff stated she needed a higher dose of Trazadone to help with sleep. Tr. 508. She also stated that her episodes of "dissociating" had decreased from "3-4 times per week" to only once a week." *Id*. Ms. Roy noted that Plaintiff's "dissociative" episodes had never been "neurologically checked." Tr. 509. On March 11, 2019, Plaintiff's, mental status examination was unremarkable. Tr. 516-17. Her examination findings were unchanged on April 8, 2019. Tr. 524-25. However, Plaintiff complained that she had chest pains during anxiety episodes, and Ms. Roy ordered an EKG. Tr. 534.

On July 15, 2019, Plaintiff was ten minutes late to her appointment with Ms. Roy and was "not happy" about having to wait to be seen. Tr. 534. She had not had the EKG and blamed her mother for not making the appointment. *Id*. Although Plaintiff minimized the chest pains she had reported at the previous appointment, Ms. Roy still wanted a baseline EKG. *Id*. On examination, Plaintiff showed irritable mood and affect, impaired attention and concentration, disorganized thought content, circumstantial thought process, and restless but cooperative mood. Tr. 532-33. She otherwise had good eye contact, relaxed posture, normal speech and activity, full

orientation, and fair insight and judgment. *Id*. Ms. Roy noted that Plaintiff was "very talkative, negative and irritable though not rude." Tr. 534. Plaintiff felt that Cymbalta was "making her angry," and Ms. Roy discussed adding a different mood stabilizer as Tr. 534.

The next day, on July 16, 2019, at a therapy visit with Ms. Wroblewski, Plaintiff's mood and affect were euthymic, and she reported an overall stable mood, less panic attacks, and improved anxiety. Tr. 655. On August 19, 2019, Plaintiff reported to Ms. Roy that her mood was more evened out, and her mental status examination was unremarkable. Tr. 540-42. During a visit with Ms. Wroblewski on September 9, 2019, Plaintiff reported an increase in her symptoms of depression and anxiety, and felt she needed to be hospitalized due to her increased symptoms, suicidal thoughts, and concerns about her medications. Tr. 665.

On September 10, 2019, Plaintiff was voluntarily admitted to Brylin Hospital ("Brylin") after reporting suicidal ideation and attempting to take pills. Tr. 452-67. Upon examination, she was somewhat angry and intermittently tearful, but she was alert and maintained eye contact and had intact cognitive function, average intelligence, and fair insight and judgment. Tr. 454, 458. Plaintiff was "able to give a coherent and clear history" but "struggle[d] with details pertaining to her previous psychotropic medication trials." Tr. 454, 458. It was noted that she was able to express her needs to actively seek support, and she was discharged in stable condition on September 17, 2019. Tr. 455.

On September 19, 2019, a few days after her discharge from Brylin, Plaintiff showed euthymic mood and normal affect. Tr. 670. On September 30, 2019, Plaintiff's mental status examination was unremarkable. Tr. 549-50. Ms. Roy noted that Plaintiff was feeling better after her hospitalization earlier that month, which had followed an argument with her mother. Tr. 551. Plaintiff denied any suicidal thoughts; her medication was adjusted at the hospital. *Id*.At follow-

up appointments in October and November 2019, Plaintiff's mood was neutral, and her affect was within normal limits. Tr. 675, 681, 686. On February 10, 2020, Plaintiff showed mildly anxious mood and affect, and she reported that her mood was up and down since her last appointment. Tr. 692.

On February 24, 2020, Ms. Roy completed a Mental Impairment Questionnaire. Tr. 572-77. Ms. Roy diagnosed Plaintiff with bipolar II disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder. Tr. 572. She noted that Plaintiff reported that medications helped her manage her symptoms, but she was still having "breakthrough anxiety/panic triggered by external stressors." *Id*. Ms. Roy opined that Plaintiff was unable to meet competitive standards in the following mental abilities and aptitudes needed to do unskilled work: maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with normal work stress. Tr. 574.

Ms. Roy opined that Plaintiff was seriously limited in the ability to set realistic goals or make plans independently of others, deal with stress of semi-skilled or skilled work; travel in unfamiliar places; and use public transportation. Tr. 575. She further opined that Plaintiff had moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and would have one or two episodes of decompensation within a twelve-month period, each of at least two weeks duration. Tr. 576. Finally, Ms. Roy opined that Plaintiff would be off-task 25% or more of the workday and would be absent more than four days per month because of her impairments. Tr. 576-77.

As noted above, Plaintiff argues that the ALJ's mental RFC finding was not supported by substantial evidence because the ALJ erred in her consideration of the opinion evidence. *See* ECF No. 8-1 at 13-30. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily

required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera*, 697 F.3d at 151 ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March

27, 2017). Plaintiff filed her application on July 11, 2018, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

The ALJ found that Plaintiff's mental impairments, while limiting, did not preclude the performance of work consisting of object-oriented tasks requiring only occasional work-related interactions with co-workers, supervisors, and the public. Tr. 32-33. Contrary to Plaintiff's

arguments, the ALJ's decision indicates that she relied on multiple evidentiary sources, including the opinions of Drs. Santarpia and Farmer, the prior administrative medical findings of state agency psychological consultant Dr. Bruni, Plaintiff's overall conservative course of treatment and largely normal mental status findings, and her wide range of daily activities, to make an RFC finding that reasonably accounted for Plaintiff's credible limitations as supported by the record. Tr. 32-36.  *See* 20 C.F.R. §§ 404.1527, 416.927.

First, the ALJ observed that, upon examination by Dr. Santarpia in March 2018, Plaintiff was cooperative and responsive to questions, with adequate manner of relating and overall presentation. Tr. 34, 407. Her mood was neutral; her affect was of full range and appropriate in speech and thought content; and she was fully oriented with a clear sensorium and normal motor behavior. Tr. 407-08. As the ALJ noted, Plaintiff was well-groomed and casually dressed, with appropriate eye contact, fluent speech, clear voice, and adequate expressive and receptive language. Tr. 34, 407. She had average cognition; fair insight and judgment; coherent and goal-directed thought processes; and her attention, concentration, and memory were intact. Tr. 34-35, 407-08. As the ALJ also noted, Plaintiff reported performing a wide array of activities, including dressing, bathing, grooming, cleaning, managing her money, socializing with friends and family, playing video games, using a computer, watching television, reading, doing art, using her cellphone, and being on social media. Tr. 35, 408.

The ALJ next observed that upon examination by Dr. Farmer in September 2018, Plaintiff again was cooperative with adequate social skills and manner of relating. Tr. 35, 425. Her mood was mildly anxious, but her affect was of full range and appropriate in speech and thought content, and she had fair grooming, casual dress, and normal motor behavior. Tr. 425. As the ALJ noted, Plaintiff had appropriate eye contact, fluent and clear speech, and adequate expressive

and receptive language skills. Tr. 35, 425. She had intact attention, concentration, and memory, fair insight and judgment, average cognitive functioning, and coherent and goal directed thought processes. Tr. 35, citing Tr. 425-26. The ALJ also noted that Plaintiff again reported performing a wide variety of activities, including dressing, bathing, grooming, cooking, cleaning, doing laundry, shopping, managing money, socializing with friends, and making costumes. Tr. 35, 426.

In Dr. Santarpia's opinion, Plaintiff had a mild impairment in interacting adequately with supervisors, coworkers, and the public, regulating emotions, controlling behavior, and maintaining well-being. Tr. 410. Dr. Santarpia opined that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function daily. Tr. 409. In Dr. Farmer's opinion, Plaintiff had moderate limitations in interacting adequately with supervisors, coworkers, and the public, regulating emotions, controlling behavior, and maintaining well-being. Tr. 426-27. Dr. Farmer further opined that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. Tr. 427.

The ALJ explained that she found Dr. Santarpia and Dr. Farmer's opinions "generally persuasive" because they both supported their conclusions with objective mental status examination findings, and their opinions were generally consistent with the medical evidence of record, including Plaintiff's daily activities. Tr. 35, 408, 420-21, 425-26, 659, 675. *See Grega v. Saul*, 816 F. App'x 580, 582–83 (2d Cir. 2020) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (the opinion of a consultative examiner may constitute substantial evidence in support of an ALJ's decision)).

Furthermore, contrary to Plaintiff's argument (*see* ECF No. 8-1 at 15-17), Dr. Farmer's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being is consistent with the ALJ's RFC finding for simple, unskilled, work involving limited

social interaction. Tr. 32-33. *See, e.g.*, *Susan B. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 107, 117 n.3 (W.D.N.Y. 2021) (opinion of moderate limitations with regulating emotions, controlling behavior and maintaining well-being was consistent with RFC for unskilled work involving limited interaction with others); *Holly M. v. Comm'r of Soc. Sec.*, 20-cv-6863-MWP, 2022 WL 2160236 (W.D.N.Y. June 15, 2022) (opinion of moderate limitations with regulating emotions, controlling behavior, and maintaining well-being was not inconsistent with RFC for simple work with no production rate pace work, occasional interaction with others, and being off-task five to seven percent of the workday with one unscheduled absence per month); *Barksdale v. Saul*, No. 6:18-CV-6239, 2019 WL 3842358, *3-4 (W.D.N.Y. Aug. 15, 2019) (rejecting Plaintiff's argument that the ALJ "ignored" an opinion assessing moderate limitations in regulating emotions, controlling behavior, and maintaining well-being, and finding such an opinion was not inconsistent with the RFC for simple work with only occasional interaction with others). *see also Mayer v. Comm'r of Soc. Sec.*, No. 18-CV-0062, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (collecting cases).

Plaintiff cites *Jimmie E. v. Comm'r of Soc. Sec.*, No. 20-CV-0406-MJR, 2021 WL 2493337, at *5 (W.D.N.Y. June 18, 2021), for the proposition that courts in this district have remanded where an ALJ found a claimant capable of "simple, unskilled work" but failed to include a "moderate" limitation in regulating emotion, controlling behavior and maintaining well-being. *See* ECF No. 8-1 at 18. However, that case is inapposite. In *Jimmie E.*, the court found that the RFC limiting plaintiff to simple, unskilled work was insufficient because it did not explain how a doctor's opined moderate-to-marked limitations in using reason and judgment to make work-related decisions, sustaining concentration, and performing tasks at a consistent pace

impacted the plaintiff's ability to perform simple, unskilled work. *See Jimmie E.*, 2021 WL 2493337, at *5. Here, Plaintiff argues that the RFC failed to account for Dr. Farmer's opinion of only moderate limitations in regulating emotions, controlling behavior, and maintaining well-being. *See* ECF No. 8-1 at 17-18. As explained above, an opinion of moderate limitations with regulating emotions, controlling behavior and maintaining well-being is not inconsistent with an RFC for unskilled work involving limited interaction with others. Moreover, unlike the doctor in *Jimmie E.*, here, Dr. Farmer opined that Plaintiff's psychiatric and cognitive problems were not significant enough to interfere with her ability to function on a daily basis. Tr. 427. Thus, Plaintiff's reliance on *Jimmie E.* is misplaced.

The ALJ also considered and found persuasive the September 2018 prior administrative medical findings of state agency psychological consultant Dr. Bruni. Tr. 35, 74-85, 86-97, 428-30. Dr. Bruni reviewed the then-available evidence of record, including the findings and opinions of Drs. Santarpia and Farmer, and similarly concluded that Plaintiff had no more than moderate limitations in any area of mental functioning. Tr. 79-82, 91-94. As the ALJ explained, Dr. Bruni provided extensive rationales to support his findings, citing specific evidence of record and resolving inconsistencies in the record. Tr. 35. As the ALJ further explained, the specific functional limitations and abilities that Dr. Bruni assessed were consistent with the mental status examination findings. Tr. 35,. 351, 353, 357, 363, 367, 407-408, 455, 479, 499-500, 506-07, 516-17, 524-25, 540-41, 549-50, 609, 612-94. Further, Dr. Bruni's findings were consistent with Plaintiff's activities of daily living, including spending time with friends and her mother, drawing, watching television, making crafts and cosplay costumes, playing video games, and caring for her own personal needs. Tr. 35, 408, 420-21, 659, 675.

Contrary to Plaintiff's argument (*see* ECF No. 8-1 at 14-18), the ALJ's decision was not "internally inconsistent" because she assigned the same level of persuasiveness opinions to both Dr. Santarpia and Dr. Farmer's opinions, as both opinions ultimately support the RFC. As preciously explained, moderate limitations, such as those assessed by Drs. Bruni, Santarpia, and Farmer, are consistent with the performance of the basic mental demands of unskilled work. Here, the RFC finding already limited Plaintiff to unskilled work consisting of object-oriented tasks with only occasional work-related interactions with coworkers, supervisors, and the public; therefore, no greater limitations were required. *See German v. Comm'r of Soc. Sec.*, No. 19-cv-03328, 2020 WL 5899521, at *11 (S.D.N.Y. May 27, 2020) (moderate mental limitations did not require a finding that the claimant was limited beyond unskilled work);  *see also Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (assessment of mild to moderate limitations were accounted for by RFC limitations to simple tasks in a low-stress environment); *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014) (moderate limitations in social functioning and concentration, persistence and pace consistent with an RFC for unskilled work); *Zabala v. Astrue*, 595 F.3d 402, 407-11 (moderate limitations in work related functioning consistent with the ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and  responding to supervision).

Additionally, the ALJ did not rely solely on opinion evidence in assessing Plaintiff's RFC. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as

medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56. Moreover, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

In addition to the consultative examination findings and opinions, the ALJ also discussed records of Plaintiff's individual therapy and medication management visits throughout the relevant period. Tr. 33. As the ALJ pointed out, medication management notes from November 2017 through June 2018 showed some issues with compliance. Tr. 34, 352, 358, 364, 368, 385, 394, 403. In July 2018, Dr. Rowland also noted that Plaintiff "had been inconsistent with her appointments, leaving early, cancelling, and no showing." Tr. 34, 422., As the ALJ noted, however, despite issues of noncompliance and Plaintiff's subjective reports of symptoms and psychological stressors, her objective mental status examinations remained largely normal, including appropriate dress, good eye contact, full orientation, cooperative attitude, fair attention and concentration, and intact memory, insight, and judgment. Tr. 34, 351, 357, 363, 367, 417-22. The ALJ further noted that in August 2018, Plaintiff reported that she was compliant with her medications, at which time she was well groomed, cooperative, and friendly, with fair eye contact, euthymic mood, logical thought process, and fair attention, concentration, memory, insight, and judgment. Tr. 34, 471, 479.

Additionally, noted the ALJ, Plaintiff's mental status examinations were largely unremarkable from October 2018 through August 2019 despite her ongoing subjective complaints. Tr. 34, 499-500, 506-507, 516-17, 524-25, 540-41, 549-50. For instance, on October

29, 2018 and January 10, 2019, Plaintiff showed a depressed or dysphoric mood and affect, but otherwise unremarkable mental status examination findings, and she had good rapport with her clinician. Tr. 499-500, 506-507. Her exam findings were similarly unremarkable on March 11, 2019 and April 8, 2019, and she continued to have good rapport with her clinician. Tr. 516-17, 524-25. While Plaintiff showed some worsening symptoms on July 15, 2019, Ms. Roy noted that Cymbalta may have contributed to Plaintiff's angry mood and discussed adding a different mood stabilizer. Tr. 532-34. Thereafter, on August 19, 2019, Plaintiff's mental status examination was unremarkable, and she reported her mood was more evened out. Tr. 540-42.

The ALJ also discussed Plaintiff's inpatient treatment at Brylin for suicidal ideation. Tr. 34, 452-67, 551. Plaintiff asserts that the ALJ "downplayed Plaintiff's suicide attempts" because the ALJ stated that Plaintiff's hospitalization was "related to suicidal ideation in the context of a fight with her mother" and inaccurately stated that it was a "five-day admission." *See* ECF No. 8-1 at 27. Contrary to Plaintiff's assertion, however, the ALJ accurately cited treatment notes showing that Plaintiff was hospitalized after an argument with her mother. *See* Tr. 34, 551. Further, although the ALJ inaccurately described Plaintiff's hospitalization as a "five-day admission," she accurately stated that it lasted from September 10, 2019 through September 17, 2019. Tr. 34-35. The ALJ further noted that, upon examination, Plaintiff was somewhat angry and intermittently tearful, but she was able to provide a clear and coherent history, and she was alert with appropriate eye contact. Tr. 34, 454. Although she struggled with details pertaining to her previous psychotropic medication trials, Plaintiff had intact cognitive function, average intelligence, and fair insight and judgment. Tr. 454. The ALJ also accurately noted that Plaintiff was able to express her needs to actively to seek support, and she was discharged in stable condition. Tr. 34, 455. Thus, contrary to Plaintiff's assertion (*see* ECF No. 8-1 at 24, 26-27), the

ALJ fully considered the records of Plaintiff's hospitalization in the context of her treatment history.

The ALJ also noted that Plaintiff showed euthymic mood and normal affect days after her discharge, and a mental status examination two weeks later was unremarkable. Tr. 34, 549-50, 670. At visits in October and November 2019, Plaintiff's mood was neutral, and her affect was within normal limits. Tr. 34, 675, 681, 686. As the ALJ observed, Plaintiff did not return to treatment until February 10, 2020, at which time she reported that her mood was up and down, and thinking about returning to work made her anxious. Tr. 34, 692.

Plaintiff also argues that her September 2019 hospitalization rendered the 2018 opinions of Drs. Santarpia and Farmer "stale." *See* ECF No. 8-1 at 24. However, later medical evidence does not render an opinion stale, if the "additional evidence does not raise doubts as to the reliability of [the] opinion." *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order); *see Steve P. v. Comm'r of Soc. Sec.*, 2021 WL 307566, at *5-7 (W.D.N.Y. 2021) (rejecting claimant's staleness argument where there was no change in symptoms during the period between the medical source's opinion and a surgery, and his condition improved slightly following surgery).

As discussed above, Plaintiff's mental status examination findings were generally unremarkable throughout the relevant period despite issues with psychological stressors and feelings of depression and anxiety and do not reflect such a significant deterioration in Plaintiff's mental health to render Dr. Santarpia and Dr. Farmer's opinions stale. *See Percy T. v. Comm'r of Soc. Sec.*, No. 1:20-CV-829-DB, 2021 WL 2155112, at *4 (W.D.N.Y. May 27, 2021) (finding that plaintiff's generally unremarkable mental status examination findings throughout the relevant period, despite his irritability, occasional poor judgment, and suicide attempt, did not

reflect such a significant deterioration in Plaintiff's mental health so as to render three-year old opinion of Plaintiff's mental health treatment provider stale); *Silvestri v. Comm'r of Soc. Sec.*, No. 18-CV-357 FPG, 2020 WL 746589, at \*3 (W.D.N.Y. Feb. 14, 2020) (finding that while the record was clear that Plaintiff was consistently depressed and anxious during the pendency of her claim and was hospitalized for sixteen days following a suspected suicide attempt, there was nothing to suggest that her condition deteriorated so precipitously as to render the state agency medical consultant's three-year-old opinion stale). In this case, the ALJ specifically noted that medical evidence received after Dr. Bruni issued his September 2018 assessment, which also considered Dr. Santarpia and Dr. Farmer's opinions, did not reflect an intensity or frequency of symptom exacerbation that would support further reducing Plaintiff's mental RFC. Tr. 35, 610, 640, 645, 681.

Furthermore, the ALJ also properly considered Plaintiff's daily activities, which were at odds with her claims of disability and supported the mental RFC finding. Tr. 32-33. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (a claimant's daily activities are a factor in assessing subjective symptoms); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at \*5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)).

As the ALJ noted, despite Plaintiff's complaints of disabling mental health symptoms and limitations, she reported bathing and grooming herself, preparing simple meals, watching television, drawing and making cosplay costumes and props when she felt motivated. Tr. 33, 49-51, 277-90, 408, 426. She enjoyed making costumes and dressing up as different animé characters with friends who were also involved in cosplay. Tr. 33, 49-51, 426. She reported that it took

about 24 hours to make one costume by hand, and although she did not like crowds, she would attend two cosplay conventions a year with a friend and testified to a recent trip to Disney. Tr. 33, 50-51, 53-54. She also reported interacting with friends online through adventure games. Tr. 33, 51. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (affirming the ALJ's conclusion that Krull was able to work notwithstanding mental health symptoms, where she continued to engage in moderately complex tasks such as using computers, and other daily activities).

Based on the foregoing, substantial evidence supports the ALJ's mental RFC finding, and Plaintiff fails to show that any reasonable factfinder was compelled to assess greater restrictions based on this record, as is required under the substantial evidence standard of review. While the Commissioner need only show that the ALJ's decision was supported by substantial evidence, *McIntyre*, 758 F.3d at 150, Plaintiff maintains the burden of proving that her RFC was more restricted than that found by the ALJ. *See Poupore*, 566 F.3d at 306. Plaintiff here has failed to do so.

Plaintiff's second point argues that the ALJ "improperly rejected" Ms. Roy's February 2020 opinion. *See* ECF No. 8-1 at 18-29. Ms. Roy assessed significant limitations in multiple areas of function and opined that Plaintiff would experience frequent absences and would be off task 25% of the workday. Tr. 574-77. Contrary to Plaintiff's argument, however, the ALJ properly found Ms. Roy's opinion unpersuasive, because it was unsupported by Ms. Roy's own treatment notes, which showed that Plaintiff was consistently cooperative and appropriately dressed and groomed, with adequate eye contact and normal cognition, attention, concentration, and memory. Tr. 36, 478-79, 499-500, 506-507, 516-17, 524-25, 532-33, 540-41, 549-50. The ALJ further explained that the significant limitations in Ms. Roy's opinion were inconsistent with recent therapy progress notes, which often documented Plaintiff's neutral mood, despite her

subjective complaints Tr. 36; *see also* Tr. 675, 681, 686. Ms. Roy's opined limitations were also not consistent with Plaintiff's reported activities of daily living, as discussed above. Tr. 36, 49-51, 420, 659, 675. Thus, the ALJ properly evaluated Ms. Roy's opinion under the factors of supportability and consistency, as required by the applicable regulations. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (providing that supportability and consistency are the two most important factors in determining the persuasiveness of a medical source's opinion and the ones required to be articulated by the ALJ).

Although Plaintiff cites evidence that she interprets as supporting Ms. Roy's opinion (*see* ECF No. 8-1 at 21-24), the fact that the evidence may have been weighed differently, or that there may be a reasonable interpretation of the evidence in Plaintiff's favor, is not probative. *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015); *see also McIntyre*, 758 F.3d at 149 ("If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). Thus, Plaintiff's arguments are simply a request for a reweighing of the evidence in her favor, which is inappropriate under the substantial evidence standard of review. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including multiple medical opinions, Plaintiff's overall conservative course of treatment, her largely normal mental status findings, and her wide range of daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001)

(citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 8) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE